UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
JEREMIAH SIDDIQUE JOHNSON EL, a/k/a JERRY L.
JOHNSON,

                                        Plaintiff,


                 - against -                                                        **OPINION & ORDER**

                                                                                   No. 19-CV-5102 (CS)

ROBERT J. BIRD D/B/A ROBERT J. BIRD/TOWN
OF CHESTER POLICE, BRUCE R. CHAMBERS,
ANTHONY MIRANDA, DANIEL DOELLINGER, and
TOWN OF CHESTER POLICE,
                                        Defendants.
------------------------------------------------------------------------x

<u>Appearances:</u>
Jeremiah S. Johnson El
Warwick, New York
*Pro se Plaintiff*

Michael A. Czolacz
Morris Duffy Alonso & Faley
New York, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

        Before the Court is the motion to dismiss of Defendants Robert J. Bird, Bruce R.

Chambers, Daniel J. Doellinger, and the Town of Chester Police Department (collectively,

"Defendants").  (Doc. 38.)  For the following reasons, Defendants' motion is GRANTED.

## I.    **BACKGROUND**

### A.  **Facts**

        I accept as true the facts, but not the conclusions, set forth in Plaintiff's Second Amended

Complaint, (Doc. 27 ("SAC")), and Plaintiff's Opposition to Defendants' Motion to Dismiss

(Doc. 42 ("P's Opp.")).[1]  As I explained in the memo endorsement issued December 3, 2019, (Doc. 32), I treat the documents at ECF Nos. 28-30[2] as if they are part of the Second Amended Complaint.[3]

On or about March 22, 2019, around 4:00 a.m., Town of Chester Police Officer Bruce R. Chambers followed Plaintiff's car for about one mile and then pulled him over for a traffic stop. (SAC at 1-2.)  Plaintiff did not initially understand why Chambers pulled him over.  (*Id.* at 4-5.) Chambers asked, "[W]ho is this car registered to[?]," and Plaintiff stated that the car was registered to "a religious organization and trust" called "MOSI-EL."  (P's Opp. at 4.)[4]  When Chambers requested Plaintiff's driver's license, Plaintiff stated that he is an "indigenous man of Moorish American de[s]cent" and did not need to have a driver's license while traveling, and instead he provided a "nationality card" and a "picture identification card."  (*Id.*)

---

[1] "[A]llegations made in a *pro se* plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss."  *Braxton v. Nichols*, No. 08-CV-8568, 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010).  The Court will send Plaintiff copies of all unreported cases cited in this Opinion and Order.  Plaintiff submitted several unauthorized sur-replies, (Docs. 45-47), which I nevertheless have considered and which do not change the outcome.

[2] In my December 3, 2019 Order, I erroneously referred to Docs. 28-31, but Doc. 31 is a letter from defense counsel; I meant to refer to Docs. 28-30.

[3] Plaintiff's papers include entirely frivolous material, such as irrelevant legal citations and incoherent arguments regarding ancient treaties and the like.  I informed Plaintiff several times, through memo endorsement and at conferences, that "[t]his case is about an allegedly unlawful stop and allegedly unlawful tickets" and that he "would do well to set aside the gobbledygook and focus on those claims."  (*See* Doc. 12.)  He did not heed my suggestion.  Nevertheless, because Plaintiff *pro se* he is entitled to "special solicitude," *Shibeshi v. City of N.Y.*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (internal quotation marks omitted), and I construe his papers liberally to raise the strongest arguments that they suggest, *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*).

[4] Citations to the Second Amended Complaint and Plaintiff's Opposition use the page numbers generated by the Court's Electronic Filing System.

Chambers threatened to arrest Plaintiff or impound his vehicle, and grabbed the handle of his gun. (*Id.*)  After forty-five minutes, Plaintiff requested a sergeant. (*Id.*)  Thereafter, Officer Robert J. Bird arrived and made unspecified threats, and Plaintiff again requested a sergeant. (*Id.*)  Bird said he was a "supervising officer sergeant" but "had no sergeant shield displayed." (*Id.* at 2.)  Bird ordered Plaintiff out of the car and opened his passenger door. (*Id.* at 4.)  Chambers stood at the driver's side door.  Bird said that if Plaintiff did not get out of the car, he would "'physically snatch'" Plaintiff out of the car, and said, "[G]et your black ass out of the car before I physically remove your ass out of the car.'" (*Id.* at 2, 4.)  Plaintiff exited the car, and the officers "surrounded" him while "grabbing their guns," refused to return his identification, and said they would tow his car if he did not produce a driver's license. (*Id.* at 4.)

Plaintiff gave Chambers his "bank card," and Chambers conducted "an unlawful search of [his] information." (*Id.*)  Plaintiff was told to sit back in his car. (*Id.*)  One of the officers told him he was pulled over for "a wrong left turn" and "having no inspection sticker." (SAC at 4-5.)  Chambers gave him a ticket for "no inspection" and then partially tore the inspection sticker on Plaintiff's window. (P's Opp. at 4; *see* Doc. 30 at 3.)  Bird said, "'[W]here did you get this inspection, New Burgh New York I bet, yea, Yall, All dirty and illegal in New Burgh,'" and "'I don't trust [none] of you people, you all are illegal.'" (P's Opp. at 4.)  Plaintiff was also ticketed for failing signal when making a turn under New York Vehicle and Traffic Law ("VTL") § 1163(b). (SAC at 21; *see* Doc. 40-2.)[5]  The officers told Plaintiff that they did not recognize Plaintiff's "status as an indigenous man" and that he did not have any rights under the Treaty of

---

[5] I can take judicial notice of the Chester Town Court Certificate of Disposition dated August 20, 2019, attached to Defendants' counsel's declaration in support of the motion to dismiss. (Doc. 40-2.)  *See Jones v. Rivera*, No. 13-CV-1042, 2015 WL 8362766, at *3 (S.D.N.Y. Dec. 7, 2015) (taking judicial notice of certificate of disposition submitted by defendant on motion to dismiss).

Peace and Friendship of 1786/87, which Plaintiff claims governs his rights as a "flesh and blood man Moor/Muur American National."  (P's Opp. at 4.)  On July 17, 2019, Plaintiff disposed of his case with a $150 fine for failing to yield to a pedestrian in a crosswalk under VTL § 1152(a), and that disposition covered the no-inspection ticket.  (Doc. 40-2.)

At some point after the traffic stop, Plaintiff made a complaint to the Town of Chester Police Department about Bird and Chambers.  (P's Opp. at 4.)  "[S]hortly afterwards," a poster with Plaintiff's photograph under the word "CAUTION" was displayed at gas stations in Chester.  (*Id.*; *see* SAC at 20.)  The text of the poster reads as follows:

> The above listed male is Jeremiah Siddique Johnson El (AKA Jerry Lateek Johnson, Jerry Poindexter, Jerome Johnson).  During a recent interaction with TCPD Officers, Jeremiah stated that he is a Moorish National and that the laws of the United States, as well as the State of New York do not apply to him.  Jeremiah claims to be a former law enforcement officer and has a current unrestricted (full carry) pistol permit.  Jeremiah has also mailed several suspicious packages to Town Offices.  At this time Jeremiah is considered a safety risk.  Persons coming into contact with Jeremiah are to contact Town Police at (845) 469-9311 for non-emergencies and 911 for emergencies.

(SAC at 20.)  The poster "[s]lander[ed]" Plaintiff and "cause[d] injury," (P's Opp. at 4), by affecting "the family and [neighbors]" and making his neighbors uncomfortable, afraid, and anti-social, (SAC at 5).

Some weeks after the traffic stop, Bird wrote a letter to Orange County Court Judge William J. DeProspo describing what he called "concern[ing]" behavior by Plaintiff, stating that Plaintiff had a county-issued Unrestricted Carry Pistol Permit, and requesting that Judge DeProspo "immediately revoke" the pistol permit "in the interest of public safety."  (SAC at 13.)  Bird wrote that he learned that Plaintiff claimed to be a former police officer with the Administration for Children's Services ("ACS") in New York City, checked with Chief Miranda of the ACS Police, and was told that Plaintiff was never employed as a police officer by that

4

organization and that Plaintiff "resigned while facing charges for a false arrest as well as an Article 78 for being mentally unfit for the job." (*Id.*)  Bird also wrote that in 1991 Plaintiff was convicted for criminal possession of a loaded firearm in the third degree, a felony. (*Id.*)  Plaintiff alleges that the letter is a "false report." (*Id.*)

On May 16, 2019, Plaintiff's pistol permit was revoked. (*Id.* at 15.)  Plaintiff requested reconsideration and Judge DeProspo scheduled a hearing, for which Plaintiff failed to appear. (*Id.*; *see id.* at 10-11.)  Plaintiff was not aware of the hearing. (*Id.* at 4.)  On October 9, 2019, after receiving and reviewing several written submissions from Plaintiff, (*id.* at 11), Judge DeProspo issued a second order revoking Plaintiff's pistol permit, (*id.* at 15).  As a result of losing his permit, Plaintiff lost contracts to work as an armed security guard. (*Id.* at 5.)  Officers from the Orange County Sheriff's Department, the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and the Federal Bureau of Investigation came to Plaintiff's home and removed his weapons. (P's Opp. at 5.)

### B.  Procedural History

On May 30, 2019, Plaintiff filed a complaint against Bird, Chambers, and Western Surety Company alleging various constitutional violations resulting from the traffic stop. (Doc. 2 at 5-6.)  Plaintiff also alleged a violation of the Treaty of Peace and Friendship between the United States and Morocco ("Treaty"). (*Id.* at 5.)  By Order dated July 3, 2019, the Court granted Plaintiff's request to proceed without prepayment of fees – that is, *in forma pauperis*. (Doc. 5.)  By Order dated July 12, 2019, the Court dismissed the claims against Western Surety and ordered service on Defendants Bird and Chambers. (Doc. 7.)  Defendants answered, (Doc. 15), and at a case management conference on September 5, I granted Plaintiff leave to amend. (Minute Entry dated Sept. 5, 2019.)  On October 1, Plaintiff filed an amended complaint, adding

Miranda and Town of Chester Police Chief Doellinger as defendants.  (Doc. 19 at 1.)[6]  The Town

of Chester Defendants – Bird, Chambers, and Doellinger – filed a pre-motion letter on October 3,

(Doc. 20), and the Court held a pre-motion conference on October 28 at which I granted Plaintiff

leave to amend a second time, (Minute Entry dated Oct. 28, 2019).

On November 26, Plaintiff filed the Second Amended Complaint naming Bird and

"Et al" as Defendants and listing four causes of action:  fraud, violation of due process, perjury,

and emotional distress.  (SAC at 4-6.)  On January 13, 2020, Defendants filed a motion to

dismiss, (Doc. 38), a memorandum of law in support of that motion, (Doc. 39), and an affidavit

of counsel, (Doc. 40).  On February 19, 2020, Plaintiff filed an opposition to the motion, (P's

Opp.), and Defendants replied on March 2, 2020, (Doc. 43), after which Plaintiff submitted

unauthorized sur-replies, (Docs. 45-47).

## II.   **LEGAL STANDARDS**

### A.    **Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

---

[6] It does not appear that Miranda was served, but for the reasons discussed herein, Plaintiff's claims against him are dismissed *sua sponte* for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B).

will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

As described above, complaints by *pro se* plaintiffs shall be examined with "special solicitude," interpreted "to raise the strongest arguments that they suggest," *Shibeshi*, 475 F. App'x at 808 (internal quotation marks and emphasis omitted), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*) (internal quotation marks omitted).  Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations that [the plaintiff] has not pled."  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

**B.  Documents Properly Considered**

When deciding a motion to dismiss, a court is entitled to consider:

(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents integral to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Incorporated Village of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted).  Plaintiff has attached the following relevant documents to the Second Amended Complaint and his opposition:  the letter from Bird to DeProspo, (SAC at 13), the poster, (*id*. at 20), the revised order of revocation and accompanying letter from DeProspo to Plaintiff, (*id*. at 10-12, 14-15), and a receipt dated July 17, 2019, showing the disposition of two traffic violations, (*id*. at 21).  I consider the facts alleged in these documents for purposes of this motion.  Plaintiff also attached a document entitled "Treaty with Morocco. 1787."  (SAC 22-29.)  As I informed Plaintiff on the record at conferences on September 5, 2019, and October 28, 2019, and in writing, (*see* Doc. 12), this document cannot affect the outcome of this motion as any claims asserted under it are frivolous.  *See Murakush Caliphate of Amexem Inc. v. New Jersey*, 790 F. Supp. 2d 241, 272 (D.N.J. 2011) (emphasis in original) (internal quotations omitted) ("[C]laims challenging any events associated with arrests, searches, detention, incarceration, prosecution, conviction, etc. that occur within the United States' actual geographical territory (and, especially, if these events involved individuals who reside within that territory) cannot possibly implicate *any* provision of the Treaty with Morocco.  Therefore, all such . . . claims invoking the Barbary Treaties . . . are necessarily frivolous . . . .").  Accordingly, I do not consider it.  And as previously mentioned, I take judicial notice of the Chester Town Court Certificate of Disposition dated August 20, 2019.  (Doc. 40-2.)  *See Jones*, 2015 WL 8362766, at *3.

III.     **DISCUSSION**

    A.  **Claims Arising Out of the Traffic Stop**

Plaintiff styles his first cause of action as "fraud" related to the March 22, 2019 traffic stop, (*see* SAC at 4-5; P's Opp. at 5), but he does not allege any facts that would support such a claim.  Interpreting Plaintiff's papers to raise the strongest arguments they suggest, I construe Plaintiff's allegations to be seeking to assert claims based on a traffic stop without reasonable suspicion and/or malicious prosecution under 42 U.S.C. § 1983.

    1.  **Illegal Stop**

"[T]raffic stops must satisfy the Fourth Amendment's reasonableness limitation, which requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity."  *United States v. Gomez*, 877 F.3d 76, 86 (2d Cir. 2017) (internal quotation marks omitted).

> An investigatory stop is permissible under the Fourth Amendment if supported by reasonable suspicion.  The principal components of a determination of reasonable suspicion will be the events which occurred leading up to the stop and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion. Reasonable suspicion exists where the officer has a particularized and objective basis for suspecting the person stopped of criminal activity.

*Chepilko v. Bushuyev*, No. 14-CV-6732, 2016 WL 6407479, at *4 (S.D.N.Y. Oct. 28, 2016) (internal quotation marks, citations, and alterations omitted), *report & recommendation adopted*, 2016 WL 7106235 (S.D.N.Y. Dec. 5, 2016).  "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."  *Whren v. United States*, 517 U.S. 806, 810 (1996).

Plaintiff alleges in conclusory fashion that Chambers had no probable cause to stop him, but his papers contain no facts that plausibly allege an illegal traffic stop. Plaintiff alleges that Chambers told him that the stop was for a "wrong left turn." (SAC at 5.) VTL § 1163(b) requires turn signals to be used "during not less than the last one hundred feet" before turning. Plaintiff does not allege that he was using his turn signal, that he did not make a "wrong" turn, or that Chambers did not see him or could not have seen him making such a turn. Plaintiff alleges that Chambers did not pull over a speeding driver who dangerously passed Plaintiff, but that fact has no bearing on Chambers's reasonable suspicion as to whether Plaintiff was not using proper turning movements and required signals. Plaintiff alleges no facts from which I can infer that Chambers lacked reasonable suspicion to stop him. Accordingly, his claim based on an illegal stop is dismissed. *See Marshall v. City of N.Y.*, No. 12-CV-7128, 2014 WL 1468890, at *4 (S.D.N.Y. Apr. 15, 2014).[7] Indeed, Plaintiff later admitted that he had failed to yield, (*see* Doc. 40-2), which shows that he committed a traffic violation supporting the stop. *Sandstrom v. New York*, No. 18-CV-1514, 2020 WL 3949344, at *15 (W.D.N.Y. Feb. 20, 2020), *report & recommendation adopted sub nom. Sandstrom v. Chautauqua County*, 2020 WL 1861710 (W.D.N.Y. Apr. 13, 2020). In other words, Plaintiff's admission to the violation "conclusively establishes probable cause for [the] traffic stop." *Evans v. Solomon*, 681 F. Supp. 2d 233, 245

---

[7] Plaintiff alleges that Chambers detained him "for over 45 minutes." (P's Opp. at 4.) To the extent Plaintiff is seeking to allege an unreasonable seizure based on the length of his detention, he fails to do so. Even though "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures," *Rodriguez v. United States*, 575 U.S. 348, 350 (2015), Plaintiff alleges no facts suggesting that the stop was overly long. To the contrary, Plaintiff admits that he prolonged the stop by refusing to produce a driver's license, providing only unofficial identification that required the officers to track down whether Plaintiff was in fact licensed, and insisting that the laws of New York State and the United States do not apply to him as a Moorish national. (P's Opp. at 4.)

(E.D.N.Y. 2010).[8]  Plaintiff has thus not stated a plausible Fourth Amendment violation arising from the stop.

### 2.  Malicious Prosecution

Plaintiff alleges that Chambers "gave [him] a ticket for no inspection and then ripped [his] inspection sticker out of [his] window."  (P's Opp. at 4.)  To assert a malicious prosecution claim, Plaintiff must plausibly allege that "(1) the defendant either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted in actual malice."  *Creese v. City of N.Y.*, No. 19-2502, 2020 WL 2755698, at *3 (2d Cir. May 27, 2020) (summary order) (internal quotation marks omitted).  "[T]o make out a claim for malicious prosecution, a plaintiff must 'show some deprivation of liberty consistent with the concept of "seizure."'"  *Corcoran v. Higgins*, No. 08-CV-10734, 2010 WL 1957231, at *4 (S.D.N.Y. May 13, 2010) (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995)).  "[T]he issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure."  *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010).  "[A] plaintiff asserting a malicious prosecution claim under § 1983 must [also] show that the underlying criminal proceeding ended in a manner that affirmatively indicates his innocence."  *Lanning v. City of Glens Falls*, 908 F.3d 19, 22 (2d Cir. 2018).

---

[8] To the extent Plaintiff means to argue that traffic enforcement violates his right to travel, that claim is dismissed as frivolous.  *See Annan v. State of N.Y. Dep't of Motor Vehicles*, No. 15-CV-1058, 2016 WL 8189269, at *5 (E.D.N.Y. Mar. 2, 2016), *aff'd*, 662 F. App'x 85 (2d Cir. 2016) (summary order).

Here, Plaintiff suffered no deprivation of liberty because he received two pre-arraignment, non-felony summonses for violation of VTL §§ 1163 (failure to use a turn signal before changing lanes) and 306 (uninspected motor vehicle) with no further restrictions. (*See* P's Opp. at 4-5; Doc. 40-2.) Plaintiff does not allege any further encumbrances on his liberty. Accordingly, he has not plausibly alleged a malicious prosecution claim. *See Corcoran*, 2010 WL 1957231, at \*4 (granting summary judgment on malicious prosecution claim because two traffic tickets did not constitute a Fourth Amendment seizure); *Mangino v. Incorporated Village of Patchogue*, 739 F. Supp. 2d 205, 227-29 (E.D.N.Y. 2010) (collecting cases), *on reconsideration in part*, 814 F. Supp. 2d 242 (E.D.N.Y. 2011).

Even if Plaintiff had plausibly alleged deprivation of liberty, he has not alleged that the proceeding terminated in his favor. "[I]f the outcome [of a proceeding] was the result of a compromise to which the accused agreed, . . . it is not a termination in favor of the accused for purposes of a malicious prosecution claim." *Posr v. Ct. Officer Shield No. 207*, 180 F.3d 409, 418 (2d Cir. 1999). "When a charge is dismissed as part of a plea bargain, the dropped charge is not a favorable termination sufficient to support a malicious prosecution claim." *Wims v. N.Y.C. Police Dep't*, No. 10-CV-6128, 2011 WL 2946369, at \*3 (S.D.N.Y. July 20, 2011). Here, Plaintiff received tickets for violation of VTL §§ 1163 and 306. (*See* Doc. 40-2.) The Chester Town Court disposed of the § 1163(b) ticket upon Plaintiff's payment of a fine for violation of VTL § 1152(a) (failure to yield to a pedestrian in a crosswalk), and it disposed of the § 306(b) ticket because it was covered by that payment. (*See id.*) Accordingly, Plaintiff did not allege a favorable termination, and his malicious prosecution claim would also be dismissed on that

basis.[9]  *See Black v. Petitinato*, 761 F. App'x 18, 23 (2d Cir. 2019) (summary order) ("The

dismissal of charges as part of a plea bargain . . . does not constitute a favorable termination.").

### B.  Claims Arising Out of the Revocation of Plaintiff's Firearm Permit

Plaintiff styles his second cause of action as a "violation of due process" involving

"[f]raud regarding Violation of 2nd Amendment Rights."  (*See* SAC at 5; P's Opp. at 5-6.)

Plaintiff may be asserting claims that Bird, Chambers, Doellinger, and Miranda violated his right

to procedural due process by causing his pistol permit to be revoked.  But in a previous ruling in

a different case brought by Plaintiff, Chief Judge McMahon dismissed for failure to state a claim

on which relief may be granted Plaintiff's procedural due process claim based on the same facts,

because "Plaintiff allege[d] no facts suggesting that the state-court remedy to challenge Judge

DeProspo's decision – an Article 78 proceeding in the Appellate Division – is inadequate."

*Johnson El ex rel. Johnson v. DeProspo*, No. 19-CV-8426, 2019 WL 6311882, at *4 (S.D.N.Y.

Nov. 22, 2019) (citation omitted).  This claim is barred here under the doctrine of claim

preclusion, which provides that "a final judgment on the merits of an action precludes the

parties . . . from relitigating issues that were or could have been raised in that action."  *Allen v.

McCurry*, 449 U.S. 90, 94 (1980).  "To prove the affirmative defense a party must show that (1)

the previous action involved an adjudication on the merits; (2) the previous action involved the

plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or

could have been, raised in the prior action."  *Twersky v. Yeshiva Univ.*, 112 F. Supp. 3d 173, 179

(S.D.N.Y. 2015) (internal quotation marks omitted), *aff'd sub nom. Gutman v. Yeshiva Univ.*,

---

[9] If Plaintiff intended to assert a false arrest claim, it would likewise fail, both because Plaintiff was not subjected to deprivation of liberty tantamount to an arrest, *see LoSardo v. Ribaudo*, No. 14-CV-6710, 2015 WL 502077, at *5 (E.D.N.Y. Feb. 5, 2015) (collecting cases), and because his conviction shows that by definition there was probable cause, *see, e.g.*, *Horvath v. City of N.Y.*, No. 12-CV-6005, 2015 WL 1757759, at *3 (E.D.N.Y. Apr. 17, 2015).

637 F. App'x 48 (2d Cir. 2016) (summary order).[10]   A court is entitled to raise the defense of

claim preclusion *sua sponte*.  *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394,

398 n.4 (2d Cir. 2003).

The previous granting of a motion to dismiss for failure to state a claim is a final

adjudication on the merits, it involved Plaintiff, and the claim that Defendants violated Plaintiff's

procedural due process right by causing his pistol permit to be revoked was raised in the prior

action as to Bird and Chambers and could have been raised as to Doellinger and Miranda

because the claims arise out of the same incident.  Moreover, I agree with Chief Judge McMahon

on the merits.  And, in any event, even if Plaintiff was not notified of the in-person hearing,

Judge DeProspo provided Plaintiff with an ample opportunity to be heard by considering

multiple written submissions from Plaintiff before entering his final order.  Plaintiff's due

process claims arising out of the pistol permit revocation are therefore dismissed.[11]

The next claim Plaintiff advances under the heading of due process seems to be distinct

from what Plaintiff alleged in his case before Chief Judge McMahon.  Plaintiff alleges here that

Bird, Chambers, and Doellinger conducted an investigation into Plaintiff's background and sent

to Judge DeProspo false information provided by Miranda, which caused DeProspo to revoke

Plaintiff's gun permit, which caused the authorities to go to Plaintiff's home and confiscate his

---

[10] Because the previous suit arose in federal court, federal common law governs.  *See Taylor v. Sturgell*, 553 U.S. 880, 891 (2008); *Wyly v. Weiss*, 697 F.3d 131, 140 (2d Cir. 2012).

[11] Chief Judge McMahon's order of dismissal is dated November 22, 2019.  Plaintiff's Second Amended Complaint is dated November 26, 2019.  It therefore seems like Plaintiff was trying to get a second bite at the apple as to his pistol permit revocation claim.  He is advised that further attempts to bring this same claim may be dismissed as frivolous because he has now been told twice that it is not meritorious, and any further attempts will waste the Court's and opposing counsel's time.

arms.  Plaintiff claims that this violated his Second Amendment right to bear arms.  (P's Opp. at 5-6.)

Judge DeProspo revoked Plaintiff's pistol permit under N.Y. Penal Law § 400, (*see* SAC at 14-15), which provides that no firearm license shall be issued to a person who has been convicted of a felony.  Judge DeProspo's order indicates that Plaintiff had been convicted of a felony, and Plaintiff does not deny it.[12]  Therefore, the permit revocation appears to be squarely within § 400.  And it is well established that denying felons firearm permits does not violate the Second Amendment.  *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (reaffirming that prohibitions on firearm possession by felons are permissible); *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008) ("[N]othing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons . . . ."); *United States v. Bogle*, 717 F.3d 281, 281-82 (2d Cir. 2013) (upholding as constitutional restriction on Second Amendment rights of convicted felons) (*per curiam*).

Plaintiff claims as his third cause of action that Miranda, the Chief of ACS, committed perjury.  (SAC at 5.)  This allegation seems to arise out of Bird's investigation, during which Miranda told him that Plaintiff was never employed as a police officer by ACS and that Plaintiff "resigned while facing charges for a false arrest as well as an Article 78 for being mentally unfit for the job."  (*Id.* at 13.)  There is no indication that Bird was aware that any information he received from Miranda was false, but in any event, perjury is a crime and does not give rise to a

---

[12] Evidently, Plaintiff lied to the licensing judge in 2015 and said he was not guilty of the felony of which he had previously been convicted.  (SAC at 12.)  But he has not denied in his many submissions to this Court that he was convicted of Criminal Possession of a Loaded Firearm in the Third Degree in 1991.  (*See id.* at 14.)

civil cause of action.  *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002).[13]  Plaintiff therefore has

not stated a cognizable claim in connection with this activity.[14]

### C.  Claims Arising Out of the Town of Chester Police Department's Poster

Plaintiff claims that the Town of Chester created a "[s]landerous, defamatory notice" that

caused him emotional distress.  (SAC at 5-6.)  I construe this to be an attempt to state a claim

that Defendant Town of Chester violated Plaintiff's right to due process by defaming him, which

is known as a "stigma plus" claim.  *See Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004).

Even palpably false statements by a governmental actor will not support a federal claim if

the only injury is to the plaintiff's reputation.  *See Paul v. Davis*, 424 U.S. 693, 712 (1976)

("[A]ny harm or injury to [a reputational] interest, even where . . . inflicted by an officer of the

State, does not result in a deprivation of any 'liberty' or 'property' recognized by state or federal

law . . . .").  To prevail on a "stigma plus" claim, a plaintiff must show "(1) the utterance of a

statement 'sufficiently derogatory to injure his or her reputation, that is capable of being proved

false, and that he or she claims is false,' and (2) a material state-imposed burden or state-imposed

alteration of the plaintiff's status or rights" in addition to the stigmatizing statement.  *Sadallah*,

383 F.3d at 38 (quoting *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001),

*rev'd on other grounds sub nom. Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 6-7 (2003)); *see*

*Paul*, 424 U.S. at 701-02, 710-11).  "Thus, even where a plaintiff's allegations would be

sufficient to demonstrate a government-imposed stigma, such defamation is not, absent more, a

---

[13] Further, the crime of perjury involves knowingly false statements under oath, and there is no indication that any of the challenged statements were made under oath.

[14] The Court dismisses this claim *sua sponte* as to Miranda under 28 U.S.C. § 1915(e)(2)(B) (authorizing dismissal of claims filed *in forma pauperis* if they are frivolous or fail to state a claim upon which relief can be granted).

deprivation of a liberty or property interest protected by due process." *Sadallah*, 383 F.3d at 38

(citing *Siegert v. Gilley*, 500 U.S. 226, 233 (1991)).

Assuming that Plaintiff had plausibly alleges that the poster is sufficiently false and

derogatory, he has failed to plausibly allege any state-imposed burden.  Plaintiff does not

describe any injury resulting from the poster beyond damage to his reputation, (*see* SAC at 5

(Defendants' actions made Plaintiff's neighbors uncomfortable, afraid, and antisocial)), and

"'deleterious effects [flowing] directly from a sullied reputation,' standing alone, do not

constitute a 'plus' under the 'stigma plus' doctrine," *Sadallah*, 383 F.3d at 38 (alteration in

original) (quoting *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994)).  Absent any allegation

of an additional "deprivation of a legal right or status," *Abramson v. Pataki*, 278 F.3d 93, 101,

103 (2d Cir. 2002), Plaintiff has not alleged a "plus" sufficient to sustain a "stigma plus" claim.

Accordingly, his due process claim arising out of the Town of Chester Police Department's

poster is dismissed.

Plaintiff also alleges that he made a complaint to the Town of Chester Police Department

against Bird and Chambers and "shortly afterwards" the poster "was circulated throughout the

town."  (P's Opp. at 4.)  Plaintiff may be trying to state a claim for First Amendment retaliation.

(*See* SAC at 5 ("Respondent(s) acted in careless manner with regards to the personal

attacks/retaliation . . . .").)  To state such a claim, a plaintiff "must plausibly allege that (1) his or

her speech or conduct was protected by the First Amendment; (2) the defendant took an adverse

action against him or her; and (3) there was a causal connection between this adverse action and

the protected speech." *Montero v. City of Yonkers*, 890 F.3d 386, 394 (2d Cir. 2018) (internal

quotation marks and alterations omitted).  "[P]rivate citizens claiming retaliation for their

criticism of public officials have been required to show that they suffered an actual chill in their

speech" or other forms of "tangible harm" as a result. *Zherka v. Amicone*, 634 F.3d 642, 645-46 (2d Cir. 2011) (internal quotation marks omitted) (collecting cases).

Here, Plaintiff has not alleged that the poster chilled his speech or caused other tangible harm sufficient to state a retaliation claim under § 1983. He alleges in conclusory fashion that his family and neighbors were affected and his neighbors made to feel uncomfortable, afraid, and anti-social. (SAC at 5.) But he does not allege any concrete harm such as the revocation of a building permit, the failure to enforce zoning laws, or an arrest without probable cause. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002); *Gagliardi v. Village of Pawling*, 18 F.3d 188, 195 (2d Cir. 1994); *Goonewardena v. Spinelli*, No. 15-CV-5239, 2017 WL 4280549, at *14 (E.D.N.Y. Sept. 26, 2017). Because "[h]urt feelings or a bruised ego are not by themselves the stuff of constitutional tort," the poster "fail[s] to cross the threshold of measurable harm required to move government response to public complaint from the forum of free speech into federal court." *Zherka*, 634 F.3d at 645-46. Plaintiff's First Amendment claim is therefore dismissed.

### D.  Remaining Claims

To the extent Plaintiff attempted to allege that Doellinger should be liable for the actions of his employees under a theory of supervisory liability because he is the Chief of the Town of Chester Police Department, those claims must be dismissed because all of the underlying claims are dismissed, *see Jones v. Harris*, 665 F. Supp. 2d 384, 403 (S.D.N.Y. 2009), and because even if Plaintiff had pleaded a constitutional tort, a supervisor cannot be held liable for constitutional torts of subordinates on a theory of *respondeat superior*, *see Ying Li v. City of N.Y.*, 246 F. Supp. 3d 578, 638 (E.D.N.Y. 2017).

To the extent that Plaintiff alleges discrimination based on his status as "a [descendant] of the aboriginal indigenous, Native American, Moorish American National," (*see* P's Opp. at 4), those claims are dismissed for failure to state a claim upon which relief can be granted.  *See El Ameen Bey v. Stumpf*, 825 F. Supp. 2d 537, 546 (D.N.J. 2011) ("Any claims or arguments raised by Plaintiff which are based on his membership in the Moorish American Nation are by definition frivolous.") (internal quotation marks and alterations omitted).

To the extent Plaintiff attempts to state any claims against Judge DeProspo, those claims are dismissed because he is protected by the doctrine of judicial immunity, *see Libertarian Party of Erie Cnty. v. Cuomo*, No. 18-386, 2020 WL 4590250, at *12 (2d Cir. Aug. 11, 2020), and because Chief Judge McMahon already dismissed Plaintiff's claims against him, *Johnson El ex rel. Johnson*, 2019 WL 6311882, at *3.

Plaintiff's request for a "nun[c]-pro-tunc order Ex parte in this matter of that has caused injury" is denied.  (*See* P's Opp. at 3.)  That application is nonsensical.

To the extent any of Plaintiff's allegations can be construed as attempting to state claims under state law, those claims are dismissed.  The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal law claims are eliminated before trial.  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Having determined that all of the claims over which this Court has original jurisdiction should be dismissed, and having considered the factors set forth in *Cohill*, I decline to exercise supplemental jurisdiction over any of Plaintiff's potential remaining state law causes of action.  *See id*. (citing 28 U.S.C. § 1367(c)(3)).  Accordingly, Plaintiff's state law claims are dismissed without prejudice.

IV.    **LEAVE TO AMEND**

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to

amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks omitted).

> Leave to amend, though liberally granted, may properly be denied for:  "undue
> delay, bad faith or dilatory motive on the part of the movant, repeated failure to
> cure deficiencies by amendments previously allowed, undue prejudice to the
> opposing party by virtue of allowance of the amendment, futility of amendment,
> etc."

*Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S.

178, 182 (1962)).

Plaintiff has already amended twice, after having the opportunity to review two pre-

motion letters from Defendants stating the grounds on which they would move to dismiss, (Docs.

20, 35), as well as having the benefit of the Court's observations during the pre-motion

conference, (Minute Entry dated Oct. 28, 2019).  In general, a plaintiff's failure to fix

deficiencies in the previous pleading, after being provided notice of them, is alone sufficient

ground to deny leave to amend.  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*,

898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his

complaint when he first amended, he clearly has no right to a second amendment even if the

proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy

district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.")

(internal quotation marks, alteration, and footnote omitted); *In re Eaton Vance Mut. Funds Fee

Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs

have had two opportunities to cure the defects in their complaints, including a procedure through

which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by

the defendants and given a chance to amend their Consolidated Amended Complaint," and

"plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).

After the motion to dismiss was fully briefed, Plaintiff attempted, without leave of court, to file a Third Amended Complaint, which I struck as unauthorized and untimely.  (*See* Doc. 49.)  Having reviewed the proposed Third Amended Complaint, I find that allowing Plaintiff to amend a third time would be futile.  The proposed Third Amended Complaint is largely identical to pages one through six of the Second Amended Complaint and pages four through five of Plaintiff's memorandum of law in opposition to Defendants' motion to dismiss.  The only new fact that would have any effect on the plausibility of Plaintiff's claims is that while Plaintiff was being followed by Chambers, Plaintiff turned on his left turn signal before making a left turn.  But as described above, Plaintiff's admission of his failure to yield separately supports the traffic stop and extinguishes Plaintiff's claims arising from an allegedly illegal stop.  *See Sandstrom*, 2020 WL 3949344, at *15; *Evans*, 681 F. Supp. 2d at 245.  Accordingly, accepting the proposed Third Amended Complaint – even if there were some excuse for attempting to file it after the motion to dismiss was fully briefed – would not change the outcome here.

"The problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); s*ee TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with

prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result), *reh'g denied*, 645 F.3d 519 (2d Cir. 2011) (*per curiam*). Accordingly, there being no indication that Plaintiff is in possession of facts that could cure the problems identified in this Opinion, I decline to grant Plaintiff leave to amend.

## V.   <u>CONCLUSION</u>

For the above reasons, the Defendants' motion to dismiss is GRANTED.  The Clerk of Court is respectfully requested to terminate the pending motion, (Doc. 38), and close the case.

**SO ORDERED.**

Dated: August 31, 2020
      White Plains, New York

_____
      CATHY SEIBEL, U.S.D.J